The **COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION,** Complainant,

v.

**Gary S. GILL, Respondent.**

No. 91–1133.

Supreme Court of Iowa.

Dec. 24, 1991.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Gary S. Gill, West Des Moines, pro se.

SNELL, Justice.

The respondent, Gary S. Gill, an attorney licensed to practice law in the state of Iowa, challenges the unanimous finding of the Grievance Commission of the Supreme Court of Iowa that he committed multiple violations of the Iowa Code of Professional Responsibility for Lawyers. The Commission recommended that Gill's license to practice law be suspended indefinitely with no possibility of reinstatement for three months. We accept the recommendation of the Commission.

In July 1988, Gill undertook the representation of Andrea Rafoth in a dissolution of marriage proceeding in Dubuque County. After entry of the final dissolution decree by the district court on March 14, 1989, Rafoth instructed Gill to file a notice of appeal on her behalf. Gill filed the notice of appeal on April 11, 1989, but did not inform his client that he had done so.

On June 20, 1989, the clerk of the supreme court issued a notice of default and assessment of penalty for failure to comply with Iowa Rule of Appellate Procedure 15,

which requires designation of the contents of the appendix. Although the notice is addressed to Gill at his correct address, he denies ever having received the notice. He admits, however, that the designation of appendix was never filed. As a consequence, on July 20, 1989, the clerk of the supreme court entered an order dismissing Rafoth's appeal pursuant to Iowa Rule of Appellate Procedure 19(a) for want of prosecution.

Although Gill received the order of dismissal, he failed to take action to reinstate the appeal. In addition, he failed to inform Rafoth of the dismissal. Rafoth first learned of the dismissal from her former husband and immediately telephoned Gill for an explanation. Gill apologized and informed her that she had the option of applying for reinstatement of the appeal. Rafoth apparently told Gill "don't bother" and instead filed a complaint against him with the Committee on Professional Ethics and Conduct.

The Committee then sent Gill a notice of Rafoth's complaint by restricted certified mail on November 9, 1989. Gill claims he never received the notice; however, he admits the signature of "V. Gill" on the return receipt is that of his daughter who was working in his office as secretary and receptionist at the time. Thereafter, the Committee sent multiple notices of the complaint, all of which Gill failed to answer.

On March 29, 1991, the Committee filed a complaint against Gill with the Grievance Commission of this court, and the case proceeded to a hearing on June 18, 1991. The Commission concluded that Gill's conduct in failing to prosecute Rafoth's appeal, his failure to keep her informed, and his failure to cooperate with the Committee constituted violations of EC 1–4, EC 1–5, DR 1–102(A)(1), (5), and (6), EC 6–4, DR 6–101(A)(3), EC 7–1, DR 7–101(A)(1), (2) and (3), and EC 9–2. Gill raises a number of challenges to the Commission's findings.

## I. *Standard of Review.*

 In attorney disciplinary matters this court reviews the record de novo.

*Committee on Professional Ethics & Conduct v. Zimmerman*, 465 N.W.2d 288, 290 (Iowa 1991). The court gives the findings of the Grievance Commission respectful consideration, but is not bound by them. *Id.* The Committee has the burden to prove by a convincing preponderance of the evidence that the respondent has violated the Code of Professional Responsibility as charged. *Committee on Professional Ethics & Conduct v. Hutcheson*, 471 N.W.2d 788, 789 (Iowa 1989).

## II. *Violation of 7–101(A).*

Gill first contends that he did not violate DR 7–101(A), which provides that a lawyer shall not intentionally fail to seek the lawful objectives of his client, because his failure to perfect Rafoth's appeal was not shown to be intentional.

 This court has repeatedly held that neglect of a client's appellate and other matters constitutes a violation of DR 7–101(A) without requiring a showing of a specific intent to injure the client. *See, e.g., Committee on Professional Ethics & Conduct v. Hill*, 463 N.W.2d 1, 2 (Iowa 1990); *Committee on Professional Ethics & Conduct v. Gardalen*, 414 N.W.2d 124, 128 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Freed*, 341 N.W.2d 757, 760 (Iowa 1983). Instead, we have construed the term "intentionally" in 7–101(A) to mean "a conscious disregard" of the responsibilities assumed on behalf of the client. *Gardalen*, 414 N.W.2d at 128.

 The record before us clearly indicates that Gill consciously disregarded his responsibilities to Rafoth. Although aware that Rafoth's appeal had been dismissed for failure to designate an appendix, he failed to seek reinstatement or even inform her of the dismissal of her case. This conscious disregard of Rafoth's lawful objective—appealing her dissolution decree—establishes a violation of DR 7–101(A). We also note that this is not the first time Gill has been disciplined for consciously disregarding his responsibilities toward his client which resulted in the client's case being dismissed; in April 1988, he received

a public reprimand for neglecting a client's cause of action, resulting in dismissal of the action, and for failing to advise the client of the dismissal.

### III. *Violation of DR 6–101(A)(3).*

■ Gill next argues that his actions do not constitute a violation of DR 6–101(A)(3), which provides that a lawyer shall not neglect a legal matter entrusted to him, because it was not demonstrated that his client suffered any monetary damages. This argument demonstrates a serious misunderstanding of the policies underlying the Iowa Code of Professional Responsibility.

In contrast to civil actions for attorney malpractice, our lawyer disciplinary case law has never made monetary harm an element in a prima facie case of neglect under DR 6–101(A)(3). *See, e.g., Committee on Professional Ethics & Conduct v. Peterson,* 471 N.W.2d 787, 788 (Iowa 1991); *Hill,* 463 N.W.2d at 2; *Committee on Professional Ethics & Conduct v. Robinson,* 458 N.W.2d 393, 394–95 (Iowa 1990); *Committee on Professional Ethics & Conduct v. Wenger,* 454 N.W.2d 367, 367–68 (Iowa 1990). The Code of Professional Responsibility is designed to maintain public confidence in the legal profession as well to provide a policing mechanism for poor lawyering. Gill's actions with respect to the Rafoth case invoke both of these policies despite the fact that Rafoth was not shown to have suffered any economic harm. *See Committee on Professional Ethics & Conduct v. Kelly,* 357 N.W.2d 315, 319 (Iowa 1984) (disciplinary proceeding involves legal ethics as opposed to tort suit, which involves monetary damages). Gill's argument that economic harm must be shown to establish a violation of DR 6–101(A)(3) is without merit.

### IV. *Ethical Considerations as Basis for Lawyer Discipline.*

■ Gill next asks us to reconsider our position that compliance with the ethical considerations in the Code of Professional Responsibility is mandatory and not merely aspirational in nature. We do not perceive this argument as any justifiable reason for lowering the high standards we have established for the bar and reject it as we did before. *Committee on Professional Ethics & Conduct v. Millen,* 357 N.W.2d 313, 314–15 (Iowa 1984) ("A violation of ethical considerations alone sufficient to support disciplinary action."); *Committee on Professional Ethics & Conduct v. Behnke,* 276 N.W.2d 838, 840 (Iowa), *appeal dismissed,* 444 U.S. 805, 100 S.Ct. 27, 62 L.Ed.2d 19 (1979).

We consider the ethical considerations and disciplinary rules to be explications of the tersely phrased Canons. *In re Frerichs,* 238 N.W.2d 764, 769 (Iowa 1976) (ethical considerations and disciplinary rules serve to explicate the Canons). As such, the EC's are not to be regarded as additional rules to be complied with, but, instead, should be viewed as elaborations of the more general tenets of professional responsibility. So interpreted, the EC's are foundational and must be adhered to along with the canons and disciplinary rules.

### V. *Failure to Respond and Cooperate with the Committee.*

■ Gill maintains that because Iowa does not have an integrated bar, and he is not a member of the Iowa State Bar Association, his failure to respond to the Committee's inquiries cannot be violations of EC 1–4, EC 1–5, DR 1–102(A)(1), (5) and (6). He characterizes his failure as "simply a dispute between an attorney and a committee of a bar association in a nonintegrated bar state."

Whether a lawyer is a member of the Iowa State Bar Association is immaterial to his or her duty to cooperate with the Committee; members of the Committee "serve as appointed commissioners of this court to initiate or receive and process complaints against any attorney licensed to practice law in Iowa. They stand in the shoes of a prosecutor." *Committee on Professional Ethics & Conduct v. Michelson,* 345 N.W.2d 112, 115–16 (Iowa 1984), Iowa Sup. Ct.R. 118.2. As a result, Gill's failure to cooperate with the Committee violates the ethical considerations and disciplinary rules

listed above. *Peterson,* 471 N.W.2d at 788; *Committee on Professional Ethics & Conduct v. Stienstra,* 390 N.W.2d 135, 137 (Iowa 1986).

### VI. *Vagueness Challenges to DR 1–102(A)(1), (5) and (6), EC 1–4, EC 7–1 and EC 9–2.*

Gill next argues that he cannot be charged with unethical conduct under DR 1–102(A)(1), (5) and (6), EC 1–4, EC 7–1 and EC 9–2 because the provisions are vague and ambiguous.

■ This court has consistently rejected vagueness challenges to provisions of the Code of Professional Responsibility. *See Committee on Professional Ethics & Conduct v. Nadler,* 445 N.W.2d 358, 361 n. 3 (Iowa 1989) (vagueness challenge to EC 9–6); *Committee on Professional Ethics & Conduct v. Durham,* 279 N.W.2d 280, 283–84 (Iowa 1979) (vagueness challenge to EC 1–5, EC 9–6, and DR 1–102(A)(6); *Behnke,* 276 N.W.2d at 843, *appeal dismissed,* 444 U.S. at 805, 100 S.Ct. at 27, 62 L.Ed.2d at 19 (vagueness challenge to former version of EC 5–5). We have noted that "guidelines setting standards for members of the bar need not and cannot meet the standards of clarity required of laymen due to the training and specialized nature of the body being regulated." *Durham,* 279 N.W.2d at 284. In determining whether adequate notice of what is prohibited is given, the less stringent "reasonable attorney" standard is to be substituted for the "reasonable person" standard. *Id.*

■ Attorneys are expected to be aware of this court's decisions in other disciplinary cases. *See Committee on Professional Ethics & Conduct v. McMillen,* 449 N.W.2d 339, 340 (Iowa 1989) (rejecting, as "utterly insufficient," respondent's defense that he was unfamiliar with cases holding that lawyers have professional responsibility to file tax returns). Through the many decisions in which lawyers have been disciplined for neglect of clients' cases, failure to notify clients of material developments, and failure to respond to Committee inquiries, respondent has received clear notice of the application of DR 1–102(A)(1), (5), and (6) and EC 1–4, EC 7–1, and EC 9–2 to such misconduct. *See, e.g.,*

*Hill,* 463 N.W.2d at 2 (failure to meet appellate deadlines, resulting in dismissal of client's appeal, violates, *inter alia,* EC 7–1); *Wenger,* 454 N.W.2d at 368 (failure to inform client of material developments regarding case violates EC 9–2); *Gardalen,* 414 N.W.2d at 128 (neglect of responsibilities to client violates, *inter alia,* DR 1–102(A)(5)); *Stienstra,* 390 N.W.2d at 137 (failure to respond to Committee inquiries violates EC 1–4 and DR 1–102(A)(1), (5), and (6)); *Freed,* 341 N.W.2d at 760 (neglect of client's appeal violates DR 1–102(A)(1), (5), and (6)). Gill's argument that the cited provisions are vague and ambiguous must therefore fail.

### VII. *Violation of EC 1–5.*

■ EC 1–5 provides, in pertinent part, that "[a] lawyer should maintain high standards of professional conduct.... He should be temperate and dignified, and he should refrain from all illegal and morally reprehensible conduct." Gill argues that there is insufficient evidence to establish a violation of EC 1–5 because he was not shown to have committed any illegal acts or engaged in morally reprehensible conduct.

EC 1–5, however, also includes a requirement that lawyers "maintain high standards of professional conduct." Violation of this duty occurs when a lawyer neglects a client's case or fails to cooperate with the Committee. *See, e.g., Peterson,* 471 N.W.2d at 788. Gill clearly has violated this standard.

■ The Committee has proved the violations as found by the Commission. We hereby suspend indefinitely the license to practice law of Gary S. Gill with no possibility of reinstatement for a period of three months from the date of this opinion.

Costs are assessed to the respondent pursuant to Iowa Supreme Court Rule 118.22.

LICENSE SUSPENDED.

All Justices concur except LAVORATO, J., who takes no part.