IOWA SUPREME COURT BOARD OF
PROFESSIONAL ETHICS AND
CONDUCT, Complainant,

v.

Ralph William HILL, Respondent.

No. 97–2153.

Supreme Court of Iowa.

March 25, 1998.

David J. Grace, Des Moines, for complainant.

Ralph William Hill, pro se.

Considered by LARSON, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

The Iowa Supreme Court Board of Professional Ethics and Conduct (board) filed a complaint with the Grievance Commission of the Supreme Court (commission) against attorney Ralph William Hill. Following a hearing on the complaint, the commission found Hill had violated disciplinary rules in his handling of an interstate adoption in 1995. The commission recommended Hill's license to practice law in Iowa be revoked.

■ No appeal was taken from the commission's report. Under Iowa Supreme Court rule 118.10, if no appeal is taken from the report, we review de novo the record made before the commission and determine the matter. The board has the burden of proving violations by a convincing preponderance of the evidence. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Alexander,* 574 N.W.2d 322, 324 (Iowa 1998).

I. *Admitted Facts.*

■ On September 8, 1997, Hill accepted service of the complaint, request for admissions, request for production, and interrogatories. Hill filed a response to the complaint on September 15, but failed to respond to the request for admissions, request for production, or to answer the interrogatories. At the hearing on the complaint on November 5, Hill stated he did not respond to the request

for admissions because the complaint had alleged the same facts as those contained in the request and he had filed a denial to the material allegations in his response to the complaint.

When a request for admissions is filed in a disciplinary proceeding, the respondent may within the prescribed time: (1) answer the request, (2) object to the request, or (3) do neither—in which event the matter stands admitted. Iowa Sup.Ct. R. 118.6; Iowa R. Civ. P. 127; *Committee on Prof'l Ethics & Conduct v. Shaffer,* 230 N.W.2d 1, 2–3 (Iowa 1975). Any matter thus admitted is conclusively established. Iowa R. Civ. P. 128.

■ As a result of Hill's failure to respond, the following facts are admitted. In 1995 he represented J. and V. Anderson,[1] residents of Putman County, Missouri, with respect to an adoption of the daughter of A.C., a Missouri resident. The child was born in Adair County, Missouri on January 3, 1995. Hill prepared and secured the execution of two documents for the signature of A.C. and N.G., the father of the child. The documents provided for the relinquishment of their parental rights and consent to the adoption. The documents further provided the parents would surrender the child to the jurisdiction of the circuit court of Putman County, Missouri, for the purpose of placement for adoption by the Andersons. The documents were signed by the child's parents on January 4.

Hill was not admitted to practice in Missouri in 1995. His activities in connection with the adoption amounted to the practice of law in Missouri and violated DR 3–101(B) of the Iowa Code of Professional Responsibility for Lawyers (a lawyer shall not practice law in a jurisdiction where to do so would be in violation of the profession in that jurisdiction).

On January 6, the Andersons notified Hill that they had decided against adopting the child.[2] Hill then contacted R. and M. Hanson who he knew wanted to adopt a child. The Interstate Compact on the Placement of Children (Interstate Compact), Missouri Rev.

Stat. section 210.620, was violated on January 8, 1995 when the Hansons brought the child into Iowa. Iowa has also enacted the Interstate Compact. Iowa Code §§ 232.158–.168 (1995).

In handling an adoption with interstate implications, Hill undertook a legal matter which he knew or should have known he was not competent to handle. This is a violation of DR 6–101(A)(1) (lawyer shall not handle a legal matter which the lawyer knows or should know that the lawyer is not competent to handle, without associating with a lawyer who is competent to handle it). Hill also admitted his activities in connection with the adoption violated DR 1–102(A) (prohibiting lawyer misconduct).

Because Hill failed to answer the board's request for admissions, the commission and this court conclusively find Hill violated the disciplinary rules as identified in the request for admissions.

## II. *Additional Facts and Circumstances.*

At the commission's hearing on the complaint, the board called M. Hanson to testify as to the facts and circumstances regarding the adoption of the child. Hill cross-examined Hanson and then testified on his own behalf. The following additional facts and circumstances were proven and are considered in determination of what is an appropriate sanction for the admitted violations.

After V. Anderson contacted Hill on January 1, 1995 regarding the private adoption of a child, Hill spoke to a Missouri lawyer about adoption in Missouri and secured from him adoption forms. On January 3, Hill prepared the forms and instructed the Andersons to complete them to reflect the child's name, sex, and date of birth and to then obtain the notarized signature of the child's parents. The forms were completed and A.C. delivered her child to the Andersons at the time of her discharge from the hospital on January 4. Two days later, V. Anderson told Hill they could not go through with the adoption.

---

**1.** The recited names, other than Hill, are not the persons' actual names.

**2.** This fact was admitted by Hill at the commission hearing.

Hill knew the Hansons were childless and wanted a child. They lived in Osceola, Iowa and had previously employed him regarding the possible purchase of a pizza parlor. Hill called M. Hanson on January 7 and told her there was a child available for adoption because the couple that was going to adopt the child had changed their mind. M. Hanson said they were interested. Hill then called the Andersons who agreed to deliver the child to the Hansons. Hill assured M. Hanson the paperwork was ready. He said the paperwork was in the Andersons' name but they were giving the Hansons permission to have the baby. Hill agreed to handle the Hanson adoption for $1500 plus expenses. He said he would get the adoption papers changed over to their name. On January 8, the Hansons drove to Kirksville, Missouri, picked up the child from the Andersons, and returned to their home in Iowa.

Apparently, to provide medical coverage for the child under the terms of their employee insurance coverage, Hill prepared and filed in Clarke County, Iowa a petition for appointment of the Hansons as guardians of the child and the appointment of an attorney as guardian ad litem for the child. On January 13, the court signed an order prepared by Hill after revising the order to show it was issued for a temporary guardianship on an emergency basis.

Two weeks later, Hill told M. Hanson there was a problem and that she and her husband must either return the child to the Andersons or take the child back to Missouri to get permission to bring the child to Iowa. Hill had secured the relinquishment of parental rights and consent to adoption by the Hansons from A.C. and N.G. However, he had learned of potential problems with the adoption because of the Interstate Compact from his discussion with a juvenile court officer in Adair County, Missouri.

At that time M. Hanson contacted the guardian ad litem. He told her the child must be returned to Missouri and recommended she and the child go to Missouri. M. Hanson then took the child to Eagleville, Missouri, where they lived in a motel.

On February 3, the child was removed from the custody of the Hansons by the Missouri court and temporary custody of the child was placed with the Missouri division of family services. The Hansons employed Missouri lawyers on February 4 to assist them in their efforts to adopt a child. After initially being denied temporary custody of the child, at a subsequent hearing held on April 3, the Missouri court granted temporary custody to the Hansons. The adoption by the Hansons was completed on January 4, 1996.

Hill testified he called the Hansons because he had previously provided legal services to them and that a mutual friend said the Hansons might be interested in adopting the child. He had provided legal services for the Hansons shortly before he contacted them about the possible adoption. Hill believed there was no time to research the Interstate Compact provisions. He had heard of the Interstate Compact but was unfamiliar with its provisions. He admits it was a mistake not to comply with the Interstate Compact. Hill did not think he was practicing law in Missouri when he prepared the initial documents for relinquishment of parental rights and consent to adopt. He urges he did not appear as counsel before a court in Missouri. He suggests he was under the supervision of a Missouri attorney because he "had obtained the exemplars from him and talked to him about it."

## III. Sanctions.

The commission concluded Hill does not possess the attributes required of a lawyer licensed to practice in this state. They considered his attitude towards the board deplorable. Hill failed to respond to any of the formal proceedings. The commission considered both the admitted violations and the prior disciplinary actions against Hill when recommending revocation of his license.

In 1989, we found Hill was guilty of unethical and unprofessional conduct and we suspended his license with no possibility of reinstatement for three months. *Committee on Prof'l Ethics & Conduct v. Hill,* 436 N.W.2d 57, 59 (Iowa 1989). Hill received a public reprimand in 1990 for mishandling an appeal. *Committee on Prof'l Ethics & Conduct v.*

*Hill,* 463 N.W.2d 1, 2 (Iowa 1990). Although his conduct was viewed as a very serious matter, we concluded Hill had suffered a seven-month delay in securing his reinstatement on the 1989 suspension because the committee had not concluded its investigation on the mishandling complaints. *Id.* In 1995, we again suspended Hill's license to practice law with no possibility of reinstatement for twelve months. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hill,* 540 N.W.2d 43, 45 (Iowa 1995). Additionally, Hill's license was temporarily suspended on October 25, 1993, when he failed to appear and show cause why his license should not be temporarily suspended for abandonment of his practice. Hill had left the State of Iowa in April of 1993 to take a teaching position in the State of Washington. He did not return to Iowa until October 1994.

■ We consider both aggravating and mitigating circumstances in our determination of the appropriate discipline for ethical misconduct. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mears,* 569 N.W.2d 132, 134 (Iowa 1997). We, like the commission, believe revocation is appropriate. We hereby direct that the license of Ralph William Hill to practice law in the courts of Iowa be revoked. We further order that the costs of this action be assessed against him in accordance with Iowa Supreme Court rule 118.22.

**LICENSE REVOKED.**