# IN THE SUPREME COURT OF IOWA

No. 144 / 06-1390

Filed January 26, 2007

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD**,

      Complainant,

vs.

**WILLIAM T. MORRISON**,

      Respondent.

_____

      On review of the report of the Grievance Commission.


      Grievance Commission reports respondent has committed ethical misconduct and recommends suspension of respondent's license to practice law. **LICENSE SUSPENDED.**


      Charles L. Harrington and Teresa A. Vens, Des Moines, for complainant.


      William T. Morrison, Mason City, respondent, pro se.

**STREIT, Justice.**

A lawyer had a sexual relationship with a client he was representing in a dissolution proceeding. Because such conduct may be harmful to the client's interest and reflects poorly on the legal profession, we suspend the attorney's license for three months.

## I.  Facts and Prior Proceedings

William Morrison was admitted to the Iowa bar in 1989. He presently has a law office in Mason City. In June 2005, Morrison reported to the Iowa Supreme Court Attorney Disciplinary Board ("Board") he "engaged in a sexual relationship with a female client while representing her in a dissolution proceeding." Morrison represented this client from October 2004 through February 2005. They had sex on several occasions from November 2004 through March 2005. Morrison did not have a personal relationship with this client prior to November 2004.

The Board filed a complaint against Morrison alleging he violated the Iowa Code of Professional Responsibility for Lawyers[1] by engaging in a sexual relationship with a client. In lieu of an evidentiary hearing before the Grievance Commission, the Board and Morrison agreed to submit the matter upon stipulation. The parties stipulated to the facts above. Morrison acknowledged his conduct was unethical. The Board noted Morrison cooperated with its investigation. The parties also included with the stipulation a private admonition Morrison received from the Board in March 2004. Morrison was admonished for

---

[1]This court adopted the Iowa Rules of Professional Conduct effective July 1, 2005. Because Morrison's alleged misconduct occurred before July 1, 2005, the Iowa Code of Professional Responsibility for Lawyers governs. In substance, the rules regarding attorney-client sexual relationships remain unchanged. *See* Iowa R. of Prof'l Conduct 32:1.8(j).

"solicitation of a dissolution client for a social relationship by reason of that dissolution client's 'attractiveness.'" The parties jointly recommend Morrison's conduct warrants suspension of his Iowa law license for sixty days. The Grievance Commission recommends Morrison's license to practice law be suspended for six months and that he enter and complete a counseling program to address his "boundary issues." Morrison reports he has already completed such a counseling program with a psychologist in addition to marriage counseling.

## II.    Scope of Review

We review the findings of the Grievance Commission de novo. Iowa Ct. R. 35.10(1). We give weight to the Commission's findings but we are not bound by those findings. *Iowa Supreme Ct. Attorney Disciplinary Bd. v. McGrath*, 713 N.W.2d 682, 695 (Iowa 2006). The Board has the burden to prove disciplinary violations by a convincing preponderance of the evidence. *Iowa Supreme Ct. Attorney Disciplinary Bd. v. D'Angelo*, 710 N.W.2d 226, 230 (Iowa 2006). "This burden is 'less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case.'" *Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004)).

## III.    Merits

Morrison admits he had a sexual relationship with a client. This is a patent violation of Iowa Code of Professional Responsibility for Lawyers DR 5-101(B) (lawyer shall not engage in sexual relations with a client) and DR 1-102(A)(1) and (6) (lawyer shall not violate a disciplinary rule or engage in any other conduct that adversely reflects on the fitness to practice law). "Professional responsibility involves many gray areas, but sexual relationships between attorney and client is not one of these.

Such conduct is clearly improper." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Furlong,* 625 N.W.2d 711, 714 (Iowa 2001). Before determining the appropriate sanction, we review the sound reasons for prohibiting attorney-client sexual relationships.

First, "[t]he unequal balance of power in the attorney-client relationship, rooted in the attorney's special skill and knowledge on the one hand and the client's potential vulnerability on the other, may enable the lawyer to dominate and take unfair advantage." Iowa Code of Prof'l Responsibility EC 5-25. This is why the client's consent is irrelevant. We have previously stated "the professional relationship renders it impossible for the vulnerable layperson to be considered 'consenting.'" *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hill,* 540 N.W.2d 43, 44 (Iowa 1995) (*Hill II*); *accord Furlong,* 625 N.W.2d at 714.

Second, a sexual relationship between attorney and client may be harmful to the client's interest. This is true in any legal representation but "presents an even greater danger to the client seeking advice in times of personal crises such as divorce, death of a loved one, or when facing criminal charges." Iowa Code of Prof'l Responsibility EC 5-25.

Third, an attorney-client sexual relationship may prevent the attorney from competently representing the client. An attorney must be able to objectively evaluate the client's case. The American Bar Association stated "[t]he roles of lover and lawyer are potentially conflicting ones as the emotional involvement that is fostered by a sexual relationship has the potential to undercut the objective detachment that is often demanded for adequate representation." ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 92-364 (1992).

Finally, an attorney initiating a sexual relationship with a client or attempting to do so may undercut the client's trust and faith in the lawyer. "Clients may rightfully expect that confidences vouchsafed to the lawyer will be solely used to advance the client's interest, and will not be used to advance the lawyer's interest, sexual or otherwise." Iowa Code of Prof'l Responsibility EC 5-25.

We now turn to the appropriate sanction. We consider

> the nature and extent of the respondent's ethical infractions, his fitness to continue practicing law, our obligation to protect the public from further harm by the respondent, the need to deter other attorneys from engaging in similar misconduct, our desire to maintain the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen,* 670 N.W.2d 161, 164 (Iowa 2003). We give the discipline recommended by the Grievance Commission its due respect although "'the matter of sanction is solely within the authority of this court.'" *McGrath,* 713 N.W.2d at 703 (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sloan,* 692 N.W.2d 831, 833 (Iowa 2005)). Ultimately, we determine the appropriate discipline based on the unique facts of each case. *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Zenor,* 707 N.W.2d 176, 178 (Iowa 2005).

This court does not tolerate attorney-client sexual relationships. *See McGrath,* 713 N.W.2d at 703–04 (three-year suspension for attempting to obtain and extorting sexual favors in exchange for legal services); *Furlong,* 625 N.W.2d at 714 (eighteen-month suspension for engaging in a sexual relationship with one client and encouraging her to withdraw her complaint with the Board and sexually harassing another client); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Steffes,* 588 N.W.2d 121, 125 (Iowa 1999) (two-year suspension for attorney who took

photographs of partially-clothed client under pretext of documenting her back injury); *Hill II*, 540 N.W.2d at 45 (twelve-month suspension for making unwelcome sexual advances toward client); *Comm. on Prof'l Ethics & Conduct v. Hill*, 436 N.W.2d 57, 58–59 (Iowa 1989) (*Hill I*) (three-month suspension for accepting vulnerable client's offer to have sex in exchange for money); *Comm. on Prof'l Ethics & Conduct v. Durham*, 279 N.W.2d 280, 285–86 (Iowa 1979) (reprimand for attorney kissing and embracing inmate client). In the present case, the Grievance Commission recommends Morrison's license to practice law be suspended for six months and that he be required to complete a counseling program to address his "boundary issues." The Board on the other hand recommends a sixty-day suspension because "this case does not involve aggravating factors such as forced sexual advances or commercial exploitation."

Our review is hindered by a limited record. Based on the parties' stipulation, Morrison's conduct does not appear to be particularly egregious in comparison to our previous cases involving attorney-client sexual relationships. But even a purely consensual sexual relationship between attorney and client is clearly prohibited by DR 5-101(B) for the reasons we have already stated.

Like this case, *Hill I* involved an attorney representing a client in a dissolution action. There, we said

> A lawyer undertaking a divorce action must recognize reconciliation is possible and may be in the best interest of his client. An attorney must be aware that the actions of the client and attorney may affect negotiations in the dissolution case, including determination of custody and visitation of minor children. Sexual intercourse between the lawyer and a client seeking a dissolution of marriage carries a great potential of prejudice both to the client and to the minor children of the marriage.

*Hill I*, 436 N.W.2d at 59.  Morrison's client and her husband had at least one minor child.  We do not know from the record if the relationship between Morrison and his client prejudiced her in the dissolution action.  Nevertheless, at least the potential for harm existed and exists in any attorney-client representation.  *See Steffes*, 588 N.W.2d at 123 (sexual harassment by attorney made client uncomfortable going to attorney's office so client did not seek attorney's advice regarding pending criminal charges).

Moreover, Morrison has previously been admonished for making a sexual advance toward another client.  He became sexually involved with the client in this particular case just eight months after the admonishment.  Clearly, Morrison has not learned his lesson.  *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski*, 606 N.W.2d 11, 14 (Iowa 2000) ("The prior disciplinary history of an attorney is a factor we consider in imposing sanctions.").  A suspension of Morrison's license to practice law is necessary and appropriate.  We hereby suspend Morrison's license to practice law in Iowa for a minimum of three months.

**IV.    Conclusion**

Morrison is suspended indefinitely from the practice of law with no possibility of reinstatement for at least three months.  This suspension shall apply to all facets of the practice of law as provided in Iowa Court Rule 35.12(3) and requires notification of clients as outlined in Iowa Court Rule 35.21.  Upon any application for reinstatement, Morrison must establish that he has not practiced law during the suspension period and he has in all ways complied with the requirements of Iowa

Court Rule 35.13. Costs are taxed to Morrison pursuant to Iowa Court Rule 35.25(1).

**LICENSE SUSPENDED.**